## Vuille v. Pennsylvania Railroad Company, Appellant.

*Carriers—Common carriers—Negligence—Presumption—Condition of goods—Evidence.*

1. A presumption of negligence arises which is sufficient to justify a recovery in cases where there is no other proof than of the delivery of the goods to the carrier in good condition and their arrival at the point of destination in a damaged condition.

2. When goods are delivered to the first carrier in good order and are afterwards injured, the presumption in the absence of anything to the contrary is that they were injured by the last carrier.

3. Where a terminal carrier is sued for damages to an automobile, and the evidence shows serious structural injuries to the machine, and the defendant offers evidence that when it received the machine it was covered with dust and had its rear lamp broken, but offers no evidence of the pecuniary amount of such damages, the defendant cannot complain that the court permitted the jury to consider the damaged condition of the machine when it came into defendant's hands in fixing the amount of damages which the plaintiff was entitled to recover.

Argued Oct. 29, 1909. Appeal, No. 169, Oct. T., 1909, by defendant, from judgment of C. P. Huntingdon Co., Sept. T., 1907, No. 17, on verdict for plaintiff in case of Charles A. Vuille v. Pennsylvania Railroad Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit to recover damages for injuries to an automobile. Before WOODS, P. J.

At the trial the court charged as follows:

This is an action of assumpsit brought by Chas. A. Vuille against the Pennsylvania Railroad Company to recover for damages which he alleges he sustained by reason of the defendant company injuring or damaging a certain automobile that was in their charge at a certain time, shipped for delivery to Huntingdon, Pa., over their road. He testifies to you that he shipped or had shipped an automobile from a place in Florida over the Florida East Coast Railroad, to be delivered by them to their connecting line and finally delivered to him at the station at Huntingdon, Pa. [The evidence shows that it was in good repair when it was put in the car in Florida. Then the evidence shows that when it reached Baltimore, in charge of the Northern Central Railroad Company, it was without any card showing where it was to go or to whom it was consigned or directed, and that when it came to the station in Baltimore that it was damaged; the railroad employees testify to you that one of the lamps was off

and on the floor and that the machine was all covered with dust and that other parts of the automobile were injured.  You will determine from the evidence what the injury was and what the value of the automobile was at that time.] [3]  Then the evidence shows that when it was received here in this town it was in a very dilapidated condition, that the acetylene lamps were broken and that the body was damaged considerably and the other parts of the automobile were damaged so that the plaintiff lays his damages at about $1,200; that he sold the machine for $350 and that he paid $166 or thereabouts for repairs; that he was not able to use it and shipped it to Chicago and that they there repaired it and sold it for $350.  This is the testimony upon which the plaintiff asks you to say that he was damaged and asks you to render a verdict for the amount that you think he was damaged.

[It is incumbent upon the defendant to show that they were not guilty of negligence or that they did not do this damage to the machine.] [4]  They have called a number of witnesses and they testify that when the machine was received at Baltimore it was in a dilapidated condition, that the lamp was hurt and the body hurt in other ways and some damage done to the machine.  They testify there was nothing on it by which they could know where it was to go and that they then stored it in one of their warehouses and kept it until they found where it was to go and that they then put it in a car by itself and that they blocked the wheels and it came to Huntingdon, and that the wheels were blocked when it arrived here.  They testify that nothing occurred on the Northern Central Railroad or Pennsylvania Railroad leading up to Huntingdon by which any damage could have occurred to that machine, and that when the machine got here they found it was blocked in the car and that it was apparently in the same condition that it was when it left Baltimore.

[Now, gentlemen of the jury, we say to you it is a question for you to determine whether the damage that was inflicted on this machine was done by the Pennsylvania

Railroad Company. If it was, then the plaintiff would be entitled to recover just what damage resulted to the automobile while in charge of the Pennsylvania Railroad Company.] [5]  You have heard the positive testimony on the part of the railroad employees and you have heard the testimony on the part of the plaintiff.  Now, which evidence appeals to you as reasonable men to be proper? One of the railroad employees tells you that it would be impossible for the machine if it was blocked in the car to jump out of that blocking and then get back in again in transit.  You are to consider all this evidence, gentlemen of the jury, in arriving at your verdict.

You are not to take into consideration the facts that one of these parties is a private individual and the other a railroad company.  Decide this case as if it was between two private individuals and had no reference to a corporation.  The laws are passed for the protection of individuals and corporations alike.  We cannot get along without individuals or without corporations; hence the law says such cases must be decided as though between two individuals.

[If you find that the Pennsylvania Railroad Company, the defendant in this case, damaged this machine while in their possession—in their charge—then what damage did they inflict taking into consideration the condition of the machine when they received it, and that should be your verdict, if you find plaintiff is entitled to any damages whatever.]

Verdict and judgment for plaintiff for $1,000.  Defendant appealed.

*Errors assigned* were (1) in refusing binding instructions for defendant; (3) in overruling motion for judgment for defendant non obstante veredicto; (3–6) above instructions, quoting them.

*John D. Dorris*, for appellant, cited: Farmers' Nursery Co. v. Cowan, 21 Pa. Superior Ct. 192; Needy v. R. R.

Co., 22 Pa. Superior Ct. 489; Hauser v. R. R. Co., 147
Pa. 440; P. & R. R. R. Co. v. Schertle, 97 Pa. 450; Leh v.
R. R. Co., 30 Pa. Superior Ct. 396.

*Thos. F. Bailey*, with him *J. R. & W. B. Simpson*,
for appellee, cited: Buck v. R. R. Co., 150 Pa. 170; Ga.
R. R. Co. v. Gann & Reaves, 68 Ga. 350; Gulf, Colorado,
etc., Ry. v. Edloff, 89 Texas, 454 (34 S. W. Repr. 414);
Texas & N. O. R. R. Co. v. Brown, 37 S. W. Repr. 785;
Lamb v. Camden & Amboy Railroad, etc., Co., 46 N. Y.
271; Ga. R. R. Co. v. Gann & Reaves, 68 Ga. 350; Aigen
v. Boston & Maine R. R. Co., 132 Mass. 423.

OPINION BY HENDERSON, J., April 18, 1910:

The plaintiff's cause of action as presented at the trial was
damage resulting from the negligent transportation of an
automobile which was delivered to the Florida East Coast
Railway Company to be transported to Huntington, Pa.   The
defendant was the terminal carrier.   The plaintiff's evidence
shows that the vehicle was delivered to the initial carrier in
good condition; that it was securely packed in the car in a
manner usual in the transportation of such property and that
on its arrival at its destination it was in such a damaged con-
dition as to be unfit for use and of little value.   The property
was transferred from the car in which it was shipped from
Florida when that car arrived in Baltimore to a car of the
defendant company and transported over the Northern
Central Railroad and the main line of the defendant to
its destination.   There is little or no contradiction in re-
gard to the condition of the motor car when it was shipped
and its condition on its arrival in Huntington and a prima
facie liability was established by this evidence.   A pre-
sumption of negligence arises which is sufficient to justify a
recovery in cases where there is no other proof than of the
delivery of the goods to the carrier in good condition and their
arrival at the point of destination in a damaged condition:
American Express Company v. Sands, 55 Pa. 140; Grogan &
Merz v. Adams Express Company, 114 Pa. 523; Buck v. Penna.

R. R. Co., 150 Pa. 170; and the rule seems to prevail generally that when goods are delivered to the first carrier in good order and are afterwards injured the presumption in the absence of anything to the contrary is that they were injured by the last carrier: 4 Elliott on Railroads, sec. 1450; 5 Thompson on Negligence, sec. 6569; Cote v. N. Y., N. H. & H. R. R. Co., 182 Mass. 290. At the conclusion of the plaintiff's evidence the burden was therefore on the defendant to overcome the presumption of negligence. This it undertook to do by proof of the condition of the automobile at the time it was received from the connecting carrier at Baltimore, and the evidence was to the effect that when it was examined there it looked like an old automobile; that it was covered with dust or some other substance and that the "rear-end" lamp was broken. Nothing else was found to be broken at the examination then made. The automobile was not inspected between Baltimore and Huntingdon. The plaintiff offered evidence in rebuttal to support the theory that the injuries to it were received in its carriage by the defendant because of the failure to properly block and secure it, and the evidence on that subject was contradictory as some of the defendant's witnesses testified that it was blocked when the car arrived at its destination. Witnesses for the plaintiff who examined the car soon after it arrived did not find any blocks or evidence of blocking nor was any witness called who removed the blocks. Evidence was also lacking as to the manner in which the automobile was secured in the car when it left Baltimore. The evidence tended to show that such a vehicle not properly secured in the car would be injured in the usual movements of the train. The court submitted to the jury the question whether the damage to the machine occurred while it was in the custody of the defendant. The first and second assignments complain of the refusal of the court to give binding instructions for the defendant and to enter judgment non obstante veredicto. To comply with either of these requests it would have been necessary to eliminate from the case the presumption arising from the plaintiff's evidence and material testimony bearing on the question of the relation of the defendant to the

plaintiff's damage.   We regard the question presented as one
of fact for the determination of the jury.   The defendant
was the last carrier and the property was concededly in a
badly damaged condition when it was delivered to the plaintiff.
Whether it was transported wholly over the defendant's line
or for a part of the route only it was incumbent on the defend-
ant to account for its damaged condition and we find no error,
therefore, in that part of the charge embraced in the fourth
assignment.   The presumption of negligence arising from the
plaintiff's evidence could, of course, be rebutted, but this was
the defendant's burden and whether it was successfully done
was a question for the jury under all of the evidence.   The
charge presented the case very clearly and fairly on this sub-
ject.   The third assignment relates to the charge of the court
on the subject of damages.   The particular part of the charge
objected to is that which directed the attention of the jury to
the evidence of the defendant in regard to the condition of the
machine at Baltimore and instructing them to determine from
the evidence what the injury was and what the value of the
automobile was at that time.   The complaint is that no evi-
dence was introduced as to what the automobile was worth at
Baltimore and that therefore the court was in error in instruct-
ing the jury in the manner described.   The language of the
court in this and other parts of the charge indicates that the
word "value" was used in its broad sense as referring to the
properties which rendered the automobile useful or desirable;
its excellence or utility and not to its market value.   It will
be observed, too, that the evidence as to the condition of the
machine was introduced by the defendant.   It was presum-
ably within its power to present testimony showing the extent
to which the vehicle was depreciated in value by the broken
lamp or by the accumulated dust.   The plaintiff does not
found anything of his claim on the dusty condition of the
automobile but on the structural defects which rendered it
useless for its purpose and of little value in the market.   The
evidence of damage was introduced by the plaintiff in the
presentation of his case in chief.   To avoid or diminish lia-
bility was the burden of the defendant.   If there was no

evidence of the pecuniary amount of the damage done to the machine before it came into its hands the defendant has no ground for complaint that the court permitted the jury to take into consideration the damaged condition as alleged to have existed at Baltimore in fixing the amount of damages to which the plaintiff was entitled.

The assignments are overruled and the judgment affirmed.